UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRADFORD TAYLOR *and*
HELIE TAYLOR,

      Plaintiffs,

v.                              Case No. 8:19-cv-1761-KKM-TGW

CHRIS ALLWORTH *and*
SHANDEX TRUCK, INC.,

      Defendants.

_____/

### ORDER

Defendants Chris Allworth and Shandex Truck, Inc., filed seven amended motions in limine on August 11, 2021. (Docs. 90, 91, 92, 93, 94, 95, 96.) Plaintiffs Bradford Taylor and Helie Taylor (once again) failed to timely respond to any of the motions despite the Court's order that they do so by August 27, 2021. (Doc. 98.); *see* Local Rule 3.01(c) (providing a party fourteen days to respond). Due to Plaintiffs' failure to respond, the Court treats Defendants' motions as unopposed. *See id.* ("If a party fails to timely respond, the motion is subject to treatment as unopposed."). As explained below, the Court denies Defendants' Motions 90 and 92; grants Motions 91, 94, and 95; and grants-in-part Motions 93 and 96.

## I.    BACKGROUND

Plaintiffs Bradford and Helie Taylor suffered extensive injuries after an automobile

accident. Plaintiffs sued Chris Allworth and Shandex Truck, Inc., for their injuries in the Circuit Court for the Twelfth Judicial Circuit, in and for Manatee County, Florida. (Doc. 1-1.) Defendants subsequently removed to this Court. (Doc. 1.) In anticipation of a November 2021 trial, Defendants filed seven motions in limine, seeking rulings from this Court on the admissibility of evidence.

## II.   LEGAL STANDARD

A motion in limine is a motion to exclude or admit "evidence before the evidence is actually offered." *Luce v. United States*, 496 U.S. 38, 40 n.2 (1984). While motions in limine provide courts with the opportunity to rule on thorny evidentiary issues outside the time pressure of trial, courts should hesitate before "rul[ing] on subtle evidentiary questions outside a factual context." *Id.* at 41. "In fairness to the parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). Because motions in limine are preliminary in nature, "any party may seek reconsideration at trial." *Conklin v. R T Eng'g Corp.*, No. 3:17-CV-415-J-39JRK, 2018 WL 7291430, at *1 (M.D. Fla. Nov. 16, 2018) (Davis, J.) (citation omitted).

Federal law governs the admissibility of evidence in federal courts siting in diversity. *See Health v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (noting that in diversity cases, the

Federal Rules of Evidence govern the admissibility of evidence).

## III.   ANALYSIS

Defendants' Motions may be grouped into two: half ask this Court to admit or rule on the admissibility of Defendants' evidence, (Docs. 91, 92, and 95); the other half asks this Court to exclude or limit Plaintiffs' witness testimony, (Docs. 90, 93, 94, and 96).

### a.   Motion to Admit Plaintiff Bradford Taylor's Pre-accident Medical History (Doc. 91)[1]

Defendants seek to admit Bradford Taylor's pre-accident medical history. Specifically, Defendants point to Bradford Taylor's medical treatment at Spalding Regional Hospital for lower back pain.

The history Bradford Taylor's prior injury is relevant to this suit, which will likely focus on the cause of his injuries. Presumptively, relevant evidence is admissible. *See* Fed. R. Evid. 401. Since Plaintiffs have not responded, the Court has no reason to doubt Defendants' representations on this evidence or to find these records would be unduly prejudicial. *See* Fed. R. Evid. 403. Accordingly, the Court grants Defendants' motion to admit Plaintiff Bradford Taylor's medical records as described in Defendants' motion.[2] (Doc. 91.)

### b.   Motion to Admit Surveillance Video and Investigation Report (Doc. 92)

---

[1] Oddly, Defendants title this motion "Unopposed" yet include a certification at the end that "Counsel for the opposing party objects to this Motion in its entirety." (Doc. 91 at 4.)

[2] Plaintiffs' former counsel stipulated to the admissibility of these records on March 1, 2021. (Doc. 91 at 2.)

Defendants seeks to admit video surveillance footage depicting Bradford Taylor engaging in physical activities after his accident, along with an investigative report. (Doc. 92 at 2.) While this evidence is likely admissible if authenticated, the Court declines to admit it at this juncture.

Defendants hired Daniel DeCoursey, an investigator at Blue Line Investigative Solutions, to surveil Bradford Taylor from December 1, 2020, through December 4, 2020. (*Id.* at 2.) At the conclusion of his investigation, DeCoursey provided Defendants with video of Bradford Taylor and an investigative report that detailed his observations. On December 11, 2020, Defendants provided the videos and report to Plaintiffs. (*Id.*) Plaintiffs have not contested that the video depicts Bradford Taylor, the authenticity of the video, or its legality. Plaintiffs have also not attempted to depose DeCoursey. (*Id.* at 3.)

First-hand observations of Bradford Taylor's mobility and activity after the accident are unquestionably probative on a key issue in this case and thus relevant to the disposition of this action. *See* Fed. R. Evid. 401. And Plaintiffs' failure to respond leaves the prejudice side of the scale entirely empty.[3] *See* Fed. R. Evid. 403. As such, the videos and reports would be admissible to impeach any testimony from Bradford Taylor or others that "that he is unable to perform certain activities due to his alleged injuries and pain." (Doc. 92 at 2.) Therefore, the Court expects that the video and report will be admissible once they

---

[3] The calculus might change if a party were to establish that the surveillance violated federal or Florida law.

become relevant to impeachment of Bradford Taylor's testimony.

That said, the Court denies Defendants' motion to pre-admit the video and report. Before evidence may be admitted, the proponent must satisfy the authentication requirements of Federal Rule of Evidence 901, which requires "sufficient evidence to support a finding that the item is what the proponent claims it is." *See, e.g.*, *United States v. Broomfield*, 591 F. App'x 847, 851–52 (11th Cir. 2014) (explaining the standard of proof); *United States v. Belfast*, 622 F.3d 783, 819 (11th Cir. 2010) (explaining the operation of Rule 901(b)). Defendants have not tried to authenticate the video or the report. Accordingly, the Court denies Defendants' request to pre-admit the document or decide now that DeCoursey's testimony will be unnecessary; Defendants' Motion is denied. (Doc. 92.)

### c. Motion to Admit Bradford Taylor's Prior Convictions (Doc. 95)

Defendants seek a ruling from this Court that Bradford Taylor's prior criminal convictions are admissible for impeachment purposes at trial. (Doc. 95.) Specifically, Defendants point to Bradford Taylor's convictions for felony forgery in 2002 and misdemeanor theft in 2002.[4] These convictions are admissible.

### i. Legal Standard

A witness's prior criminal conviction may be admitted for impeachment or to attack

---

[4] Since Plaintiffs' have failed to respond, the Court treats the motion as unopposed and accepts all factual allegations as true.

the witness's character for truthfulness. *See* Fed. R. Evid. 608(b), 609. As relevant here, crimes involving honesty "must be admitted" if the court can readily establish that one of the elements of the crime was "a dishonest act or false statement." Fed. R. Evid. 609(a)(2).

However, a conviction—even one involving dishonesty—is subject to a stricter test for admission after 10 years. It is only admissible if "its probative value"—in the light of all relevant circumstances—"substantially outweighs its prejudicial effect;" and if the proponent gives an adverse party reasonable notice of its intent to use the conviction. Fed. R. Evid. 609(b).

### ii.  Application

Bradford Taylor's convictions are admissible. Bradford Taylor was convicted for felony forgery and misdemeanor theft by deception. Such acts are certainly probative of a witness's character for truthfulness. *See* Fed. R. Evid. 608(b); *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994) (reasoning that acts like "forgery, perjury, and fraud" reveal "a disregard for truth that would case doubt on a witness's veracity"). Further, it is readily apparent to the Court that both of these crimes involve proving or admitting an act of dishonesty. As such, both convictions fit within the ambit of Rule 609(a)(2).

Since these convictions are over ten years old, they are only admissible if their

probative value "substantially outweighs" their prejudicial effect. Fed. R. Evid. 609(b).[5]

Defendants argue these convictions "have strong impeachment value as they go directly to the truthfulness and honesty of [Bradford Taylor]." (Doc. 95 at 3.) Since Bradford Taylor is one of the plaintiffs in this case, the credibility of his testimony will likely be "extremely important" at trial. (*Id.* at 4); *see Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 817 (11th Cir. 2017) ("[The Eleventh Circuit] has previously recognized that '[t]he implicit assumption of Rule 609 is that prior felony convictions have probative value.'" (quoting *U.S. v. Burston*, 159 F.3d 1328, 1335 (11th Cir. 1998))). Since Plaintiffs have not identified any prejudice from the admission of this evidence, the Count finds that the clear probative value of admitting the convictions substantially outweighs any prejudice; Defendants' motion is granted. (Doc. 95.)

### d. Motions to Limit Testimony of Dr. Hayes & Dr. Foley (Docs. 90 & 94)

Defendants' file two Motions seeking to limit the opinion testimony of Plaintiffs' retained experts, Dr. Hayes and Dr. Foley. (Docs. 90, 94.) Plaintiffs' Rule 26 disclosures identify both as retained experts. (Doc. 90 at 2; Doc. 94 at 1.) Defendants seek to prevent these experts from offering causation or permanency opinions. (Doc. 90 at 1; Doc. 94 at 1.)

#### i. Dr. Hayes (Doc. 90)

---

[5] Plaintiffs have received adequate notice of the Defendants' intent to use this evidence by the filing of this Motion. *See* Fed. R. Evid. 609(b)(2).

Rule 26 requires parties to exchange certain information before trial and without request. *See* Fed. R. Civ. Proc. 26(a). As relevant here, a party must disclose the identity of an expert witness and provide a "a written report" that is "prepared and signed by the witness." Fed. R. Civ. Proc. 26(a)(2)(B). This report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. Proc. 26(a)(2)(B)(i).

As such, Plaintiffs may not ask Dr. Hayes to provide opinions beyond the scope of his Rule 26 report. Defendants' Motion, in essence, asks this Court to enforce that rule by limiting Dr. Hayes's testimony to the opinions contained within his report.[6] (*Id.*) While Rule 26 certainly requires this limitation, the Court does not grant Defendants' motion now. Defendants do not provide the Court with any reason to expect that Plaintiffs would ask Dr. Hayes to give opinions on matters beyond his knowledge, competence, or his written report. This Court will—of course—enforce the Federal Rules of Evidence and Civil Procedure, but it will not issue prophylactic orders without cause to believe a party intends to violate those rules. *Conklin*, 2018 WL 7291430, at *1 ("Motions in limine should be limited to specific pieces of evidence and not serve as reinforcement regarding

---

[6] The Court denied Defendants' motion for partial summary judgment, partially, on the basis of Dr. Foley's deposition testimony in which he opined on the permanency of Mrs. Taylor's injuries. (Doc. 82 at 6.) Defendant did not argue that these opinions were outside the scope of Dr. Foley's Rule 26 report. Accordingly, the Court did not address the issue in its order denying the motion for partial summary judgment.

the various rules governing trial."). Accordingly, Defendants' motion is denied. (Doc. 90.)

ii.  **Dr. Foley (Doc. 94)**

As to Dr. Foley, Defendants present a similar but more compelling argument. Plaintiffs' Rule 26 expert disclosure documents state that Dr. Foley is expected to testify as to "causation of injury." (Doc. 94 at 2.) However, Dr. Foley's written report did not provide any opinion on the cause of Plaintiffs' injury or its permanency. Nor have Plaintiffs' provided Defendants any other information related to Dr. Foley's causation opinions. (*Id.* at 2.)

As such, to the extent Plaintiffs intend to ask Dr. Foley to provide an opinion on the causation of Plaintiffs' injury or its permanency, they have failed to comply with Rule 26's requirements that the expert's written report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. Proc. 26(a)(2)(B)(i). As a result, Plaintiffs are "not allowed to use that [undisclosed] information" at trial. Fed. R. Civ. Proc. 37(c)(1).[7] The Court grants Defendants' motion; Dr. Foley may not provide opinion on the causation or permanence of Plaintiffs' injuries because these opinions were not contained within his Rule 26 report. Instead, his testimony will be

---

[7] In the light of Plaintiffs' failure to respond to this Motion, the Court finds that Plaintiffs have not met their burden to show "the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1); *see Mitchell v. Ford Motor Co.,* 318 F. App'x 821, (11th Cir. 2009) (observing that the nondisclosing party has the burden of establishing that the failure was justified or harmless (citing *Leathers v. Pfizer, Inc.,* 233 F.R.D. 687, 697 (N.D. Ga. 2006))). In addition, Defendants provide strong arguments that Plaintiffs' failure to timely provide these opinions would cause prejudice if these opinions were admitted at trial. (Doc. 94 at 3.)

circumscribed to the opinions he provided in his report, which center on the existence of Plaintiffs' injuries.

### e.   Motion to Preclude Testimony from Jennifer Montano (Doc. 93)

In Motion 93, Defendants' ask the Court to completely exclude Jennifer Montano from testifying on Bradford Taylor's medical expenses. (Doc. 93 at 1.) Montano—one of Plaintiffs' retained experts—is a Certified Professional Coder. (*Id.* at 2.) Plaintiffs' initially informed Defendants that she would testify "regarding the reasonableness of the charges for the medical services received by [Bradford Taylor]." (*Id.*) Defendants lodge several attacks on Montano's testimony. Most focus on two fronts: the necessity of medical care and the reasonableness of the cost of medical care. The Court concludes that Montano may not testify as to the first but may as to the second, provided her testimony comports with the appropriate foundation being laid by Plaintiffs.

Defendants ask for the Court to preclude Montano from giving an opinion on whether the medical treatment Bradford Taylor received was necessary. Montano, a professional coder and not a medical professional, is not qualified to give an opinion, or otherwise testify as an expert on what treatment was medically necessary. (Doc. 93 at 2, 5.) Montano conceded as much in her deposition testimony. (Doc. 93 at 5.) As such, Montano is not qualified as an expert and may not give an opinion on this subject.

Defendants also wish to prevent Montano from giving an opinion on whether the

medical bills were reasonable. (Doc. 93 at 5.) As a Certified Professional Coder, Montano presumably is qualified to "speak to how [medical] charges are coded." (Doc. 93 at 4.) In preparation for this case, Montano reviewed the fees listed on the facility's medical bill ledger for the CPT codes[8] charged to Bradford Taylor while he was a patient. (Doc. 93 at 2.) This information likely allows Montano to give an opinion on whether the fees the facility regularly charges for the relevant CPT codes were reasonable. *See, e.g.*, *Castellanos v. Target Corp.*, 568 F. App'x 866, 866 n.2 (11th Cir. 2014) (reasoning that a coder's testimony likely would be admissible for a "conflict over the reasonableness of charges for medical services[] assumed to be delivered"). Indeed, that testimony appears to be exactly what Plaintiffs retained Montano to do. (Doc. 93 at 2.)

Defendants point out that Montano did not view Bradford Taylor's medical bills and that she does not know what treatment he received. (*Id.* at 2, 4.) She admits that she never asked to do a "coding analysis" to confirm that the codes input by the facility match the underlying medical services or treatment provided to Bradford Taylor. (*Id.* at 2.) These obvious shortcomings do not justify excluding Montano entirely. She may testify that the CPT codes comport with the regular fees charged by the facility. But, if Defendants' summary of her report and deposition testimony is accurate, the Plaintiffs will likely be unable to establish a relevant foundation for Montano to testify to whether the codes and

---

[8] CPT (Current Procedural Terminology) codes are unique numbers assigned to the various services a medical provider may supply to a patient.

medical care themselves were reasonable. On this score then, Defendants' have merely raised deficiencies in Montano's knowledge and preparation that they may pursue on cross examination.

Accordingly, the Court grants Defendants' motion in part; Montano may not testify on whether the medical procedures performed in the past or expected in the future were or are medically necessary. However, the Court does not, at this time, preclude Montano from giving an opinion on whether the medical costs contained in the medical bill ledger are reasonable or on the process of CPT coding.[9]

### f.  Motion to Preclude Expert Testimony of Plaintiffs' Treating Physicians (Doc. 96)

Finally, Defendants seek to prevent physicians who treated Plaintiffs from offering expert testimony or opinions on the issues of causation, severity, and permanency of injuries.[10] (Doc. 96 at 2.) Plaintiffs identified several treating medical providers as non-retained experts in their Rule 26 disclosures, stating the expectation that these individuals will offer opinions at trial regarding "liability, causation and damages" for Plaintiffs'

---

[9] The Court declines to consider whether Montano's opinion rests on "inadmissible hearsay" or whether her testimony should be excluded as overly prejudicial due to the danger of confusion under Rule 403 at this juncture. (Doc. 93 at 3–5.) *See Vigneulle v. Tahsin Indus. Corp., USA*, No. 2:15-CV-2268-SLB, 2019 WL 4409220, at *1 (N.D. Ala. Feb. 19, 2019) ("[I]t is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there." (quotation omitted)).

[10] While Florida's substantive law governs Plaintiffs' burden of proof on causation, Federal Courts sitting in diversity "apply federal law to determine whether the expert testimony proffered to prove causation is sufficiently reliable." *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010) (citing *Flury*, 427 F.3d at 944). The Defendants reliance on Florida law governing the introduction of expert witnesses is thus misplaced. (Doc. 96 at 2–5.)

injuries. (*Id.*)

Defendants makes two arguments in support of exclusion. First, Defendants assert that treating physicians are not real experts, so they should not be allowed to give opinions like experts. (*Id.* at 2.) Second, Defendants claim that—even as fact witnesses—these treating physicians have no personal experience from which to make a judgment on the cause of plaintiffs' injuries. (*Id.*) This Court agrees with the first argument and defers on the second.

### i. Treating Medical Practitioners Are Not Expert Witnesses

The Federal Rules of Evidence allow an expert witness "wide latitude" to testify on matters of opinion, without requiring first-hand knowledge. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). Because "no other kind of witness is free to opine" in this manner, unbridled expert testimony poses particular dangers. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). As such, trial courts have a "gatekeeping" function, conducting "a preliminary assessment" to ensure that the proffered expert is qualified and that her opinion is helpful to the jury and is based on reliable methods. *Daubert*, 509 U.S. at 592, 597. The Eleventh Circuit has developed a "rigorous three-part inquiry" to assess experts:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry

mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260. The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong. *See Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

In this case, Plaintiffs have identified several treating physicians as "non-retained experts." (Doc. 96 at 2.) Defendants argue that these individuals are not proper experts for a variety of reasons. (*Id.* at 2–13.) As explained above, Plaintiffs bear the burden of demonstrating that the treating physicians satisfy the "basic requirements—qualification, reliability, and helpfulness." *Frazier*, 387 F.3d at 1260. Not only have Plaintiffs failed to carry their burden by a preponderance of the evidence, they have not provided this Court with *any* information. Accordingly, this Court has no basis upon which to accept them as experts. In fact, to do so would be to abdicate this Court's important role as gatekeeper of technical evidence. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) ("[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" (quoting *Daubert*, 509 U.S. at 597)). Thus, the treating physicians will be excluded as expert witnesses in the light of Plaintiffs' silence.

14

### ii. **Treating Medical Practitioners Are Fact Witnesses**

The treating physicians and medical providers, however, can testify as fact witnesses to the extent their personal knowledge and observations of Plaintiffs' injuries allows them to do so. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." (citation omitted)); *see also Morrow v. Brenntag Mid-S., Inc.*, 505 F. Supp. 3d 1287, 1293 (M.D. Fla. 2020) (Covington, J.) (allowing a doctor to testify as a lay witness after finding the doctor unqualified as an expert).

Defendants make several arguments that the treating physicians do not have sufficient personal knowledge of Plaintiffs' injuries to testify on their cause or permanence. (Doc. 96 at 10–11.) While some of Defendants' arguments are compelling, the Court declines to rule on this issue until trial or it becomes apparent that Plaintiffs intend to request that these individuals testify on matters beyond their capacity as lay witnesses. The same restrictions on regular lay witnesses equally apply to treating physicians in that the party proffering their testimony must establish the necessary foundation. In other words, Federal Rule of Evidence 602 continues to govern: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Accordingly, the Court grants Defendants' Motion 96 in part. The treating physicians and medical providers are not experts, but the Court does not at this time place any additional limitation on their testimony.

## IV.   CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motions 90 and 92; grants Motions 91, 94, and 95; and grants in part Motions 93 and 96. Accordingly, the following is **ORDERED**:

(1) Defendants' Motion 90 is **DENIED**.

(2) Defendants' Motion 91 is **GRANTED**.

(3) Defendants' Motion 92 is **DENIED**.

(4) Defendants' Motion 93 is **GRANTED-IN-PART**. Jennifer Montano may not offer an expert opinion about the necessity of medical care, but the Court declines to limit the scope of her expert testimony further at this time as delineated above.

(5) Defendants Motion 94 is **GRANTED**.

(6) Defendants' Motion 95 is **GRANTED**.

(7) Defendants Motion 96 is **GRANTED-IN-PART**. Plaintiffs' treating physicians may not testify as experts, but the Court declines to delineate the scope of their testimony as fact witnesses at this time.

**ORDERED** in Tampa, Florida, on September 22, 2021.

Kathryn Kimball Mizelle
United States District Judge